DENNIS M. PRINCE
Nevada Bar No. 5092
KEVIN T. STRONG
Nevada Bar No. 12107
**PRINCE LAW GROUP**
10801 West Charleston Boulevard
Suite 560
Las Vegas, NV 89135
Tel: (702) 534-7600
Fax: (702) 534-7601
Email: eservice@thedplg.com
-And-
CRAIG W. DRUMMOND
Nevada Bar No. 11109
LIBERTY A. PARDEE
Nevada Bar No. 14417
**DRUMMOND LAW FIRM**
3325 W. Sahara Avenue
Las Vegas, Nevada 89102
Tel: (702) 366-9966
Fax: (702) 508-9440
Attorneys for Plaintiff
*John Peterson*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| JOHN PETERSON, individually,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED FINANCIAL CASUALTY COMPANY; DOES I-V; and ROE CORPORATIONS VI-X, inclusive,<br><br>Defendants. | CASE NO.: 2:22-cv-1509-JCM-NJK<br><br>**PLAINTIFF JOHN PETERSON'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AGAINST DEFENDANT UNITED FINANCIAL CASUALTY COMPANY** |

Plaintiff JOHN PETERSON, by and through his counsel of record, Dennis M. Prince and Kevin T. Strong of PRINCE LAW GROUP, and Craig W. Drummond and Liberty A. Pardee of DRUMMOND LAW FIRM, hereby submits his *Motion for Leave to File First Amended Complaint Against Defendant United Financial Casualty Company.*
. . .



This Motion is based upon the pleadings and papers on file in this action, the Memorandum of Points and Authorities set forth herein, and any exhibits attached hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff John Peterson ("Peterson") discovered an additional factual basis to support his claims that Defendant United Financial Casualty Company ("United Financial") breached its contract and breached the implied covenant of good faith and fair dealing. Specifically, United Financial produced documents that demonstrate a billing scheme that it used to prematurely cancel the auto liability insurance policy issued to its insureds and non-parties, Guadalupe Zazueta ("Zazueta") and Pedro Perez-Papias ("Perez-Papias"). United Financial knew Zazueta and Perez-Papias were not late on their insurance premium payments, yet still decided to cancel their coverage without a reasonable basis. As a result, United Financial not only breached its policy, but also breached the covenant of good faith and fair dealing owed to its insureds. United Financial also violated the Nevada Unfair Claims Practices Act and Nevada law because its coverage cancellation notice was inadequate under Nevada law.

"The Ninth Circuit has made clear that courts should apply Rule 15(a) with **extreme liberality**" when permitting amendments to a pleading. *Sanchez v. Albertsons, LLC*, No. 2:19-cv-02017-JAD-DJA, 2022 U.S. Dist. LEXIS 239273, at *2 (D. Nev. July 5, 2022) (emphasis added). Peterson respectfully requests this Court to grant leave to amend his Complaint to allege these facts to support viable theories of liability against United Financial for breach of contract and insurance bad faith. Peterson also requests this Court allow him to assert a new claim for violation of Nevada's Unfair Claims Practices Act.

## II.

## STATEMENT OF FACTS

This insurance bad faith and judgment enforcement action arises from a motor vehicle collision that culminated in the entry of a default judgment against United

Financial's insured, Perez-Papias. On November 12, 2017, Peterson rode as a passenger in a 2013 Cadillac ATS that non-party Lindel Wayne Watkis drove southbound on State Route 582 (Boulder Highway). (ECF No. 1-2, at p. 2, ¶ 8). Perez-Papias, while driving a 2000 Chevrolet 3500 pickup truck, failed to use due care and negligently collided with the rear of Peterson's vehicle. *Id.* at p. 3, ¶¶ 9-11; *See also*, Traffic Accident Report, at Bates nos. Peterson0002–Peterson0003, attached as **Exhibit 1**. The strength of the impact was substantial enough to cause Peterson's vehicle to veer to the right, enter the travel lane next to him, and strike the right paved shoulder before finally coming to a stop on the paved sidewalk. **Exhibit 1**, at Bates no. Peterson0003. Perez-Papias was arrested at the scene of the subject collision on suspicion of driving under the influence of alcohol. (ECF No. 1-2, at p. 3, ¶ 13); *See also*, **Exhibit 1**, at Bates no. Peterson0003.

A. <u>The United Financial Insurance Policy and its Subsequent Premature Cancellation</u>

On August 24, 2017, Zazueta applied for a commercial auto liability insurance policy from United Financial, an affiliate company of Progressive Commercial Insurance. *See* Application for Insurance – United Financial, at Bates nos. UFCC000165–UFC000170, attached as **Exhibit 2**. In her application, Zazueta listed Perez-Papias as a rated driver to add to the policy. *Id.* at Bates no. UFCC000165.[1] On August 24, 2017, the United Financial policy, Policy No. 04093866-0, insuring Zazueta and Perez-Papias, became effective. *See* United Financial Policy Declarations Page, at Bates Nos. UFCC000155–UFCC000156, attached as **Exhibit 3**. The policy term for the United Financial insurance policy, Policy No. 04093866-0, was August 24, 2017 through August 24, 2018. *Id.* at Bates no. UFCC000155. The 2000 Chevrolet pickup truck Perez-Papias drove at the time of the subject collision was the listed vehicle on the United Financial insurance policy and was therefore, an insured auto under the policy. *Id.*

Zazueta's insurance application and the policy declarations page both confirmed the total policy premium for the year of coverage was $3,182.00. *See* **Exhibit 2**, at Bates

---

[1] The traffic accident report incorrectly refers to Perez-Papias as "Prez-Papias." See **Exhibit 1**, at Bates no. Peterson0002. Neither United Financial nor Progressive have ever contended Prez-Papias is a different person.

DPLG
PRINCE LAW GROUP
10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135

no. UFCC000165; **Exhibit 3**, at Bates no. UFC000155. Zazueta's application articulated a premium payment plan of ten payments. *See* **Exhibit 2**, at Bates no. UFCC000165. Although United Financial requested an initial payment of $636.40 to cover the first two premium payments, Zazueta paid $656.40. *Id.* Zazueta's initial payment of $656.40 for two premium payments should have provided coverage for her and Perez-Papias from August 24, 2016 through November 6, 2017, based on the daily premium rate. Yet, on September 8, 2017, United Financial mailed Zazueta a bill to remit her insurance premium payment in the amount of $274.85. *See* Sep. 8, 2017 Commercial Auto Insurance Bill for Aug. 24, 2017–Sep. 8, 2017, at Bates no. UFCC000171, attached as **Exhibit 4**. United Financial provided a due date of September 24, 2017 for Zazueta to remit her premium payment. *Id.* On October 8, 2017, United Financial mailed Zazueta another bill requesting she remit payment in the amount of $579.70, which included the unpaid premium payment requested in the September 8, 2017 bill, along with installment fees and late fees. *See* Oct. 8, 2017 Commercial Auto Insurance Bill for Sep. 8, 2017–Oct. 8, 2017, at Bates no. UFCC000173, attached as **Exhibit 5**. On October 30, 2017, United Financial mailed its Cancellation Notice to Zazueta:

> **Cancellation Notice**
>
> Unfortunately, we didn't receive your payment and, as a result, your policy will be cancelled at 12:01 a.m. on November 10, 2017.
>
> Please know that this means you will no longer have insurance coverage.
>
> We value you as a customer and want to continue being your insurance provider. To avoid cancellation, please send us your payment by check or money order so that it is received or postmarked by 12:01 a.m. on November 10, 2017. This way, there will be no lapse in your coverage.
>
> If you've already sent your payment, thank you. Your next regular payment will be due on November 24, 2017.
>
> You can also pay online or over the phone using a credit card or authorizing a withdrawal from your bank account. We'll credit your payment right away so your insurance coverage will continue.
>
> We sincerely appreciate your attention to this matter and thank you for your business.



DPLG

10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135

*See* Oct. 30, 2017 Cancellation Notice, at Bates no. UFCC000176, attached as **Exhibit 6**.

On November 12, 2017, United Financial mailed its Final Bill to Zazueta confirming "you no longer have insurance with us, effective November 10, 2017." *See* Nov. 12, 2017 Final Bill, at Bates no. UFCC000178, attached as **Exhibit 7**. United Financial demanded Zazueta remit payment in the amount of **$67.60**, of which $23.60 represented the unpaid policy premium for coverage until November 10, 2017. *Id.* Notably, the final bill stated the total policy premium for coverage until November 9, 2017 was **$680.00**. *Id.*

**B. Peterson's Lawsuit for Personal Injuries and Subsequent Default Judgment Entered Against Perez-Papias**

On December 12, 2017, Peterson, through his retained counsel, faxed a letter to United Financial requesting "a copy of your insured's declaration page." (ECF No. 1-2, at p. 5, ¶ 28); *See also*, Dec. 12, 2017 letter, at Bates no. UFCC000336, attached as **Exhibit 8**. Peterson's counsel referenced the claim number associated with the bodily injury claim he submitted to United Financial. *See* **Exhibit 8**. On December 14, 2017, Jalayne Zayas, an employee of the Progressive Claims Department, responded to Peterson's December 12, 2017 letter:

> To Whom it May Concern:
>
> This letter is to advise you that unfortunately, after investigating all the available information, I was unable to find valid coverage for this incident. As a result we won't be able to pay the claim for the loss on November 12, 2017, regarding claim number 17-3262492.

(ECF No. 1-2, at p. 5, ¶ 29); *See also*, Nov. 12, 2017 United Financial/Progressive letter, at Bates no. UFCC000337, attached as **Exhibit 9**.

On January 28, 2019, Peterson filed his complaint for personal injuries arising from the November 12, 2017 motor vehicle collision against Perez-Papias. (ECF No. 1-2, at p. 5, ¶ 30); *See also*, Jan. 28, 2019 personal injury complaint, Eighth Judicial District Court Case No. A-19-788276-C, attached as **Exhibit 10**.[2] On January 31, 2019, Peterson

---

[2] Peterson's personal injury complaint refers to Perez-Papias as "Prez-Papias" presumably because of the traffic accident report. *See* **Exhibit 10**, at p. 1.

DPLG
10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135

served Perez-Papias with his personal injury complaint. (ECF No. 1-2, at p. 5, ¶ 31); *See also*, Feb. 7, 2019 Affidavit of Service, Eighth Judicial District Court Case No. A-19-788276-C, attached as **Exhibit 11**. On March 12, 2019, Peterson filed his Three-Day Notice of Intent to Default Against Perez-Papias. (ECF No. 1-2, at p. 5, ¶ 32). On March 18, 2022, the Clerk of the Eighth Judicial District Court entered a Default against Perez-Papias resulting from his failure to file an answer to Peterson's personal injury complaint. *Id.* at p. 6, ¶ 33); *See also*, Mar. 18, 2019 Default, Eighth Judicial District Court Case No. A-19-788276-C, attached as **Exhibit 12**. On April 2, 2019, Peterson filed his Motion for Default Judgment. (ECF 1-2, at p. 6, ¶ 34). On July 31, 2020, the Eighth Judicial District Court entered its Judgment, Assignment, and Order against Perez-Papias in the personal injury action. *See* Aug. 3, 2020 Notice of Entry of Judgment, Assignment, and Order, Eighth Judicial District Court Case No. A-19-788276-C, at Bates nos. UFCC000342–UFCC000347, attached as **Exhibit 13**. The July 31, 2020 Judgment entered against Perez-Papias encompassed various categories of damages Peterson sustained as a result of the subject motor vehicle collision:

| | |
|---|---|
| PAST MEDICAL EXPENSES: | $52,124.13 |
| FUTURE MEDICAL EXPENSES: | $294,140.00 |
| PAST PAIN & SUFFERING: | $1,500,000.00 |
| FUTURE PAIN & SUFFERING: | $1,000,000.00 |
| PUNITIVE DAMAGES: | $2,000,000.00 |
| SUBTOTAL: | $4,846,264.13 |
| ATTORNEY'S FEES OF 40%: | $1,938,505.65 |
| COSTS [NRS18.025]: | $1,664.50 |
| SUBTOTAL: | $6,786,434.28 |
| INTEREST [NRS 17.130]: | $720,538.57 |
| **TOTAL JUDGMENT, WITH INTEREST ACCRUING AT THE NEVADA LEGAL RATE FROM 7/22/20 UNTIL SATISFIED:** | **$7,506,972.85** |

*Id.* at Bates no. UFCC000343.

The Judgment also ordered the assignment of Perez-Papias's claims and or causes of action against United Financial to Peterson:

> 3. It is further ORDERED that Plaintiff is hereby ASSIGNED any rights/claims that Defendant PEDRO PREZ-PAPIAS has for bad faith, unfair trade practices, and any other claims arising out of this case against his insurer under the authority outlined in *Gallegos v. Malco Enterprises of Nevada, dba Budget Rent A Car*, 127 Nev. Adv. Op. 51, 255 P.3d 1287 (2011). In effectuating this assignment, Plaintiff may file claims related to this case against PROGRESSIVE, UNITED FINANCIAL CASUALTY COMPANY, and/or any other company responsible for the processing, defending, denial, and payment of any insurance coverage of Defendant PEDRO PREZ-PAPIAS on his behalf. Plaintiff may take all acts related to the prosecuting and investigating of any claims that Defendant PEDRO PREZ-PAPIAS may have against his insurer, to include requesting records, invoices, directly from his insurance company, copies of correspondence, request for claims files, subpoenas, responding to discovery and any and all other rights that PEDRO PREZ-PAPIAS himself would have in connection with his operation of a motor vehicle, and insurance in place for his person, or vehicle, on November 12, 2017.

*Id.* at Bates no. UFCC000353.

Peterson served the July 31, 2020 Judgment, Assignment, and Order to United Financial/Progressive on August 3, 2020. *Id.* at Bates no. UFCC000351.

### C. Peterson's Insurance Bad Faith and Judgment Enforcement Action Against United Financial

Pursuant to the judicial assignment encompassed in the July 31, 2020 Judgment, Assignment and Order, Peterson filed the present action against United Financial. (ECF No. 1-2, at pp. 6-7, ¶ 38). Peterson alleges claims for breach of contract, fraudulent and intentional misrepresentation, breach of the contractual covenant of good faith and fair dealing, and breach of the tortious covenant of good faith and fair dealing. *Id.* at pp. 11–15, ¶¶ 56–87). Peterson now wishes to amend his Complaint to assert a separate factual theory of liability predicated upon United Financial's erroneous billing scheme, which resulted in its premature disclaimer of coverage and failure to provide an adequate explanation for the cancellation of coverage.

. . .

. . .



7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### LEGAL ARGUMENT

FRCP 15(a)(2) allows a party to amend its pleading with the opposing party's written consent or with leave of the court. A court should freely grant leave to amend "when justice so requires." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting* FED. R. CIV. P. 15(a)). Rule 15(a) grants a district court discretion to allow amendments to pleadings. *Id.* The district court however, "must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision[s] on the merits, rather than on the pleadings or technicalities." *Id.* As a result, Rule 15(a)(2) is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

A district court considers various factors to determine whether to grant a party leave to amend his pleading:

> (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint.

*JPMorgan Chase Bank, N.A. v. KB Home*, 740 F. Supp. 2d 1192, 1197 (D. Nev. 2010) (*quoting Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

"The factors do not weigh equally; as the Ninth Circuit has explained, prejudice receives the greatest weight." *McCullough v. Machado*, No. 3:16-cv-00225-MMD-VPC, 2017 U.S. Dist. LEXIS 140489, at *3 (D. Nev. Aug. 30, 2017) (*citing Eminence Capital*, 316 F.3d at 1052). Given the "strong public policy in favor of permitting amendment," Peterson respectfully requests this Court to grant leave to amend to assert an additional factual theory of liability and claim for violation of Nevada's Unfair Claims Practices Act against United Financial.

**A. The Policy Documents Provide a Sufficient Factual Basis to Allege United Financial Prematurely Cancelled its Auto Liability Insurance Policy Without a Reasonable Basis**

On August 24, 2017, the United Financial commercial auto policy covering Perez-Papias became effective. *See* **Exhibit 3**, at Bates no. UFCC000155. The policy period ran from August 24, 2017 through August 24, 2018. *Id.* The total premium for that one year of coverage was $3,182.00 and Zazueta, the named insured, agreed to a payment plan of ten payments. *Id.*; *See also*, **Exhibit 2**, at Bates no. UFCC000165. The total

DPLG

PRINCE LAW GROUP

10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135

premium of $3,182.00 divided by ten payments equals $318.20. On August 24, 2017, United Financial required Zazueta to tender an initial payment for $636.40, which equaled two premium payments under the ten payment plan. ($318.20*2=$636.40). Zazueta paid $656.40, which paid for over two months of coverage based on the daily premium rate of $8.72, which is rounded up from the actual amount ($3,182.00/365=$8.717) ($8.72*75 days=$654.00). Based on Zazueta's initial premium payment of $656.40, United Financial should have first requested Zazueta to pay the policy's next premium payment in the month of November. Instead, United Financial sent two bills on September 8, 2017 and October 8, 2017 demanding Zazueta to make additional premium payments even though she already paid for coverage for that two-month period. *See* **Exhibit 4**, at Bates no. UFCC000171; **Exhibit 5**, at Bates no. UFCC000173. United Financial then used Zazueta's failure to remit premium payments that she did not owe in September or October 2017 to prematurely cancel coverage under the auto insurance policy on November 10, 2017, a mere two days before the subject motor vehicle collision. *See* **Exhibit 6**, at Bates no. UFCC000176. To further validate United Financial's unfair and misleading billing scheme, its final bill mailed to Zazueta requested a premium payment in the amount of $23.60, exclusive of the $24.00 installment fee and $20.00 late fee. *See* **Exhibit 7**, at Bates no. UFCC000178. This amount, which was owed as of November 10, 2017, fell far below the approximate $557.70 premium payment United Financial sought to collect just days earlier. *See* **Exhibit 5**, at Bates no. UFC000173.

United Financial attempted to collect premium payments well in advance of when those payments were actually due. Zazueta paid for auto liability insurance that covered Perez-Papias from August 24, 2017 through at least November 6, 2017. Thus, United Financial should have mailed its first bill to collect a premium payment from Zazueta on November 8, 2017 and requested payment no later than November 24, 2017. Its failure to do so resulted in a breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Nevada Unfair Claims Practices Act resulting from an inadequate notice of cancellation of coverage under Nevada law.

. . .



10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135

9

### *1. Breach of contract*

The Progressive Commercial auto insurance policy that provided coverage to Perez-Papias articulated the scope of its insuring agreement:

### PART I – LIABILITY TO OTHERS

**INSURING AGREEMENT – LIABILITY TO OTHERS**
Subject to the Limits of Liability, if **you** pay the premium for liability, coverage for the **insured auto** involved, we will pay damages, other than punitive or exemplary damages, for **bodily injury, property damage**, and **covered pollution cost or expense**, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance, or use of that **insured auto** . . . .

**We** will **settle or defend**, at **our** option, any claim or **lawsuit** for damages covered by this Part I.

*See* Progressive Nevada Commercial Auto Policy, at Bates no. UFCC000188, attached as **Exhibit 14** (emphasis added and in original).

United Financial expressly agreed to defend its insured, Perez-Papias, against any lawsuit for damages covered under the insurance policy. "[W]here there is potential coverage based on 'comparing the allegations of the complaint with the terms of the policy,' an insurer does have a duty to defend." *Century Sur. Co. v. Andrew*, 432 P.3d 180, 184 n.4 (Nev. 2018) (*quoting United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004)). In his personal injury complaint, Peterson alleged Perez-Papias negligently drove his Chevrolet pickup truck when he collided into the back of his Peterson's vehicle and that his negligence caused Peterson's injuries. *See* **Exhibit 10**, at pp. 2-3, ¶¶ 6-9. Perez-Papias's pickup truck was the only vehicle listed on the United Financial insurance policy. *See* **Exhibit 3**, at Bates no. UFCC000155. United Financial prematurely cancelled Perez-Papias's coverage under the insurance policy without a reasonable basis. As a result, United Financial breached its contractual duty to defend Perez-Papias against Peterson's personal injury lawsuit. United Financial also relied on its baseless cancellation of coverage to refuse to settle Peterson's bodily injury claim or otherwise indemnify him against Peterson's bodily injury claim. In this regard, the factual circumstances that give rise to United Financial's erroneous cancellation of coverage support Peterson's request to amend his complaint.

DPLG

10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135

### 2. *Breach of the implied covenant of good faith and fair dealing*

The relationship between an insurer and its insured is one of "special confidence." *Ainsworth v. Combined Ins. Co.*, 763 P.2d 673, 676 (Nev. 1988). This relationship is recognized as fiduciary-like. *Powers v United Servs. Auto. Ass'n*, 962 P.2d 596, 603 (Nev. 1998). As a result, the special relationship between insurer and insured is "characterized by elements of public interest, adhesion, and fiduciary responsibility." *Ins. Co. of the West v. Gibson Tile Co.*, 134 P.3d 698, 702 (Nev. 2006). The nature of this relationship gives rise to the duty of good faith and fair dealing. *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 921 F. Supp. 2d 1082, 1090 (D. Nev. 2013) (*citing Powers*, 962 P.2d at 601). The tort of bad faith is defined as "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009).

Peterson's proposed amendment to his Complaint supports an additional theory of liability against United Financial for its tortious breach of the covenant of good faith and fair dealing. Peterson alleges United Financial cancelled coverage for Perez-Papias for two missed premium payments during a two-month time period for which United Financial already collected premium payments from Zazueta and/or Perez-Papias. In essence, United Financial knowingly employed a billing scheme whereby it unfairly sought to collect premiums before it became necessary to do so, and then relied on those missed payments to erroneously cancel coverage. As such, United Financial knowingly cancelled Perez-Papias's coverage for missing premium payments that were not owed when United Financial sent its bills and sought payment. These factual allegations demonstrate United Financial willfully denied benefits owed to Perez-Papias without a reasonable basis.

### 3. *Violation of the Nevada Unfair Claims Practices Act*

The Nevada Unfair Claims Practices Act is codified in Chapter 686A of the Nevada Revised Statutes. NEV. REV. STAT. 686A.310. NRS 686A.310 "addresses the manner in which an insurer handles an insured's claim whether or not the claim is denied." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010). "The statute lists sixteen activities that constitute unfair practices." *Sahinov*

DPLG
10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135

*v. Geico Advantage Ins. Co.*, No. 2:21-CV-919 JCM (VCF), 2021 U.S. Dist. LEXIS 205029, at *11 (D. Nev. Oct. 25, 2021). "When an insurance company engages in one of these prohibited activities, the insured may bring a private right of action against the insurer for violations of the statute." *Id.* NRS 686A.310 states, in pertinent part:

> 1. Engaging in any of the following activities is considered to be an unfair practice:
> . . .
>
> (m) Failing to comply with the provisions of NRS 687B.310 to 687B.390, inclusive, or 687B.410.

NRS 687B.320(1) articulates the ground for which an insurer, other than an industrial insurer, may cancel a policyholder's insurance policy. NRS 687B.310 governs the notice requirements for cancellations of insurance policies and states, in pertinent part:

> 6. Any notice to an insured required pursuant to NRS 687B.320 to 687B.350, inclusive, must be personally delivered to the insured or mailed first class or certified to the insured at the address of the insured last known by the insurer. The notice must state the effective date of the cancellation or nonrenewal and be **accompanied by a written explanation of the specific reasons for the cancellation or nonrenewal** (emphasis added),

NRS 687B.360 specifies the consequences for an insurer's failure to explain the reasons for its cancellation of an insurance policy:

> If a notice of cancellation or nonrenewal under NRS 687B.310 to 687B.420, inclusive, **does not state with reasonable precision the facts on which the insurer's decision is based, the insurer shall supply that information within 6 days after receipt of a written request by the policyholder. No notice is effective until it contains adequate information about the policyholder's right to make such a request** (emphasis added).

"These statutes aim to provide policyholders 'protection against arbitrary termination' of insurance coverage." *O.P.H. of Las Vegas, Inc. v. Or. Mut. Ins. Co.*, 401 P.3d 218, 220 (Nev. 2017) (*quoting* Nev. Rev. Stat. 687B.310(3)). United Financial's notice stated Zazueta's and Perez-Papias's coverage will be cancelled because it did not receive "your payment." *See* **Exhibit 6**, at Bates no. UFCC000176. United Financial's notice failed to explain why it cancelled coverage for missed premium payments for the

12

months of September and October 2017 when Zazueta and Perez-Papias already remitted their premium payments for those months. *Id.* Thus, United Financial failed to provide a precise explanation detailing how it could cancel coverage for missed premium payments that Zazueta and/or Perez-Papias paid at the inception of the policy. If United Financial provided such an explanation, Zazueta and Perez-Papias could have challenged the erroneous timing of United Financial's coverage cancellation.

United Financial was also legally required to state in its notice that Zazueta and Perez-Papias had the right to request the precise facts United Financial relied upon to cancel their coverage. *See* NEV. REV. STAT. 687B.360. United Financial failed to provide these instructions. *See* **Exhibit 6**, at Bates no. UFCC000176. This magnified the harm Zazueta and Perez-Papias suffered because they were left to believe they had no recourse to request United Financial clarify how it cancelled coverage for missed premium payments that they already paid. These factual allegations provide the requisite basis to allege United Financial violated subsection (m) of the Nevada Unfair Claims Practices Act. Accordingly, Peterson respectfully requests this Court grant leave to amend to assert that claim.

**B. <u>None of the Relevant Factors Justify the Denial of Peterson's Request for Leave to Amend His Complaint</u>**

The Ninth Circuit and this Court have recognized various factors to consider when determining whether to allow leave to amend. *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *New Eng. Life Ins. Co. v. Lee*, No. 2:14-cv-01797-JCM-NJK, 2016 U.S. Dist. LEXIS 190315, at *2-3 (D. Nev. Apr. 26, 2016). None of those factors weigh against Peterson's requested amendments to his Complaint.

**1. *Bad faith***

Peterson's requested amendment to his Complaint is not predicated upon bad faith. Rather, Peterson has relied upon documents, including a certified copy of the insurance policy that United Financial produced, to support his claims that United Financial erroneously cancelled coverage without a reasonable basis. These documents create a reasonable factual inference that United Financial attempted to collect premium payments prematurely and later relied on those unpaid and improper

13

premium bills to erroneously coverage. Bad faith is nonexistent under these facts and, as a result, does not justify the denial of Peterson's Motion.

### 2. Undue delay

Peterson's requested amendment is also not the product of undue delay because he timely filed his motion for leave to amend in accordance with the discovery scheduling order. (ECF No. 13, at p. 3). The timing of this motion will afford United Financial ample time to prepare its witnesses to discuss the nature of their billing operations generally and as it relates to the policy at issue in this case. United Financial will also have time to gather sufficient facts needed to develop any defenses to these claims. Peterson submits that undue delay, which standing alone, does not provide sufficient grounds for denying leave to amend, does not weigh against allowing leave to amend here. *See Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry*, 648 F.2d 1252, 1254 (9th Cir. 1981).

### 3. Prejudice to the opposing party

Peterson's proposed amendment will not unduly prejudice United Financial. United Financial cannot claim surprise by Peterson's amendment given the basis for which United Financial cancelled coverage. Moreover, Peterson's proposed amendment will not result in overly burdensome discovery obligations for United Financial because it relates to the central factual issue in this case, namely the adequacy of United Financial's coverage cancellation. The mere fact that United Financial will have to refute this additional theory of liability does not support a finding of undue prejudice. *Lee*, 2016 U.S. Dist. LEXIS 190315, at *3. Therefore, this factor does not warrant the denial of Peterson's request for leave to amend.

### 4. Futility of amendment

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid claim or defense." *Spencer v. AT&T Digital Life, Inc.*, No. 2:14-cv-01136-RFB-PAL, 2015 U.S. Dist. LEXIS 116288, at *5 (D. Nev. Sep. 1, 2015). Here, Peterson has presented well-pleaded facts to establish that United Financial prematurely charged its insureds, Zazueta and Perez-Papias, for premium payments that were already paid. United Financial then relied on those missed

14

premature charges to cancel coverage for Zazueta and Perez-Papias thereby abandoning Perez-Papias when Peterson sued him for personal injuries. These facts, if proven, will establish United Financial's liability for breach of contract, bad faith, and violation of Nevada's Unfair Claims Practices Act. Therefore, Peterson's proposed amendments are not futile.

### 5. *Whether plaintiff has previously amended his complaint*

This is Peterson's first request for leave to amend his complaint. As a result, Peterson is not using this proposed amendment to burden United Financial or for any other dilatory purpose. Rather, Peterson believes, in good faith, that the proposed facts, as alleged, provide another avenue to hold United Financial liable for breach of contract, bad faith, and violation of Nevada's Unfair Claims Practices Act.

### IV.

### <u>CONCLUSION</u>

In the absence of prejudice or a strong showing that any of the remaining factors do not support leave to amend, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015). The mandate that leave to shall be freely given when justice so requires "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .



1    In accordance with the well-established policy to liberally allow leave to amend

2  and, based on the foregoing facts, law, and analysis, Peterson respectfully requests this

3  Court to grant his Motion for Leave to File First Amended Complaint Against Defendant

4  United Financial Casualty Company. A copy of Peterson's proposed First Amended

5  Complaint is attached as **Exhibit 15**.

6    DATED this <u>13th</u> day of March, 2023.

7                                          **PRINCE LAW GROUP**

8                                          <u>*/s/ Kevin T. Strong*</u>
                                           DENNIS M. PRINCE
9                                          Nevada Bar No. 5092
                                           KEVIN T. STRONG
10                                         Nevada Bar No. 12107
                                           10801 West Charleston Boulevard
11                                         Suite 560
                                           Las Vegas, Nevada 89135
12                                         Tel:  (702) 534-7600
                                           Fax: (702) 534-7601
13                                         Attorneys for Plaintiff
                                           *John Peterson*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

Pursuant to LR 5-1 and FRCP 5(b), I hereby certify that I am an employee of **PRINCE LAW GROUP** and that on the 13th day of March, 2023, I electronically filed the foregoing document entitled **PLAINTIFF JOHN PETERSON'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AGAINST DEFENDANT UNITED FINANCIAL CASUALTY COMPANY** with the Clerk of the Court using the CM/ECF system, which sent a notice of electronic filing to the following:

John T. Keating
**KEATING LAW GROUP**
9130 W. Russell Road
Suite 200
Las Vegas, Nevada 89148
Tel: (702) 228-6800
Fax: (702) 228-0443
Attorneys for Defendant
*United Financial Casualty Company*

/s/ *Kevin T. Strong*
An Employee of Prince Law Group



*Peterson v. United Financial Casualty Company*

Case No. 2:22-cv-1509-JCM-NJK

**Index of Exhibits**

| EXHIBIT | DOCUMENT DESCRIPTION |
|---|---|
| 1 | Traffic Accident Report |
| 2 | Application for Insurance – United Financial Casualty Company |
| 3 | United Financial Policy Declarations Page, Policy No. 04093866-0 |
| 4 | Sep. 8, 2017 Commercial Auto Insurance Bill for Aug.24, 2017–Sep. 8, 2017 |
| 5 | Oct. 8, 2017 Commercial Auto Insurance Bill for Sep. 8, 2017–Oct. 8, 2017 |
| 6 | Oct. 30, 2017 Cancellation Notice |
| 7 | Nov. 12, 2017 Final Bill |
| 8 | Dec. 12, 2017 Letter from Peterson to United Financial |
| 9 | Dec. 14, 2017 United Financial/ Progressive Letter to Peterson |
| 10 | Jan. 28, 2019 Personal Injury Complaint, Eighth Judicial District Court Case No. A-19-788276-C |
| 11 | Feb. 7, 2019 Affidavit of Service, Eighth Judicial District Court Case No. A-19-788276-C |
| 12 | Mar. 8, 2019 Default, Eighth Judicial District Court Case No. A-19-788276-C |
| 13 | Aug. 3, 2020 Notice of Entry of Judgment, Assignment, and Order, Eighth Judicial District Court Case No. A-19-788276-C |
| 14 | Progressive Nevada Commercial Auto Policy |
| 15 | Plaintiff John Peterson's Proposed First Amended Complaint |

DPLG

PRINCE LAW GROUP
10801 W. Charleston Blvd.
Suite 560
Las Vegas, NV 89135