UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN PETERSON, | Case No.2:22-CV-1509  JCM (NJK) |
| Plaintiff(s), | |
| v. | ORDER |
| UNITED FINANCIAL CASUALTY COMPANY, | |
| Defendant(s). | |

Presently before the court is defendant United Financial Casualty Company's (UFCC) motion for summary judgment. (ECF No. 40). Plaintiff John Peterson filed a response (ECF No. 45), to which UFCC replied (ECF No. 49). For the reasons stated below, the court grants, in part, and denies, in part, UFCC's motion for summary judgment.

**I.   Background**

This action arises out of a car accident involving Peterson and nonparty Pedro Perez-Papias. (ECF No. 40). Perez-Papias was listed as an insured driver on the underlying policy belonging to Guadalupe Zazueta. (*Id*.). Peterson litigated the personal injury action in state court and was granted default judgment against Perez-Papias. (*Id*.). Peterson is now pursuing these claims as the assignee of Perez-Papias's remaining claims against UFCC. (*Id*.).

Peterson asserts UFCC is liable to Perez-Papias under Zazueta's policy. (ECF No. 34). Zazueta paid $656.40 to UFCC as her initial payment on the policy in August 2017. (ECF No. 40, Exhibit C).  The parties dispute how long the contract remained valid without any further payments. (*Id*.).

. . .

UFCC contends that the initial payment constituted a down payment and that Zazueta agreed to a payment plan in which she would make nine additional payments over a 12-month period. (ECF No. 49). UFCC asserts that Zazueta owed payments in September and October 2017 that she did not pay. (*Id.*).

Peterson argues that the $656.40 initial payment provided Zazueta with 75 days of coverage, and that she did not owe any further payments until November 6, 2017. (ECF No. 45). Peterson alleges the parties never agreed to a set payment schedule. (*Id.*). Neither party disputes that UFCC sent Zazueta payment bills in September and October, and that Zazueta did not pay either of them. (ECF Nos. 40; 45).

UFCC attempted to cancel Zazueta's policy for nonpayment. (ECF No. 40). On October 30, 2017, UFCC sent Zazueta a cancellation notice, effective November 10, 2017. (*Id.*). The underlying automobile accident occurred on November 12, 2017—two days after the purported cancellation. (*Id.*).

Peterson asserts five claims, alleging UFCC improperly denied coverage to Perez-Papias because the policy was still valid at the time of the collision. UFCC moves for summary judgment on all five claims.

**II.    Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits (if any), show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). The court can consider all evidence that would be admissible at

. . .

trial in resolving a motion for summary judgment. *Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir.2002).

When the non-moving party bears the burden of proof at trial, the moving party can meet its burden on summary judgment in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet his initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies his initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324. If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

**III.    Discussion**

Peterson's first amended complaint alleges five causes of action: (1) breach of contract, (2) fraudulent and intentional misrepresentation, (3) breach of the contractual covenant of good faith and fair dealing, (4) breach of the tortious covenant of good faith and fair dealing, and (5) violation of the Nevada Unfair Claims Practices Act. (ECF No. 34). UFCC moves for summary judgment

on all five claims.  (ECF No. 40).  The court will consider each claim consecutively.

    A.  <u>Breach of Contract</u>

Nevada treats insurance policies like other contracts, and thus, legal principles applicable to contracts are generally applicable to insurance policies.  *Century Sur. Co. v. Andrew*, 134 Nev. 819, 432 P.3d 180, 183 (2018) (citations omitted).  Nevada law requires a breach of contract claimant show (1) the existence of a valid contract, (2) performance by the plaintiff, (3) a breach by the defendant, and (4) damages resulting from the breach.  *Walker v. State Farm Mutual Automobile Insurance Company*, 259 F.Supp.3d 1139, 1145 (D. Nev. 2017).

The parties do not dispute that they entered into a valid insurance contract in August 2017.  UFCC contends that Zazueta owed payments in September and October 2017 and failed to pay them, so it canceled her policy prior to the collision in November 2017.  Peterson argues that Zazueta's initial payment provided coverage until November, so she did not owe payments in September or October and her policy remained effective.

Summary judgment is not appropriate when the parties' intentions in an ambiguous contract are subject to equally plausible factual inferences.  *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 857 (9th Cir. 1995).  That is the case here.

The parties dispute Zazueta's payment obligations under the contract.  The policy stated that UFCC can cancel Zazueta's policy if she fails to make premium payments when due.  (ECF No. 40, Exhibit Q at 2).  However, the policy omitted a payment schedule setting forth the exact dates on which payments were due.  Such an omission creates ambiguity in the parties' obligations under the contract.

The court may look to all admissible evidence on the summary judgment record to support its finding.  *Orr,* 285 F.3d at 773.  Zazueta selected a ten-installment payment plan in her insurance application.  (ECF No. 40, Exhibit B).  Zazueta's total premium cost was $3,182, split into ten payments of $318.20.  (*Id.*).  Zazueta's initial $636.40 payment is the amount of two installments, or twenty percent of the total contract price.  (*Id*.).

Peterson deposed Susan Peternelj, UFCC employee, who estimated that Zazueta's initial payment provided her with about 75 days of equity.  (ECF No. 40, Exhibit O at 48).  Peterson also

1  retained insurance expert Scott Glogovac, who opined in his declaration that UFCC had "no valid
2  factual basis for contending that premiums were 'due'" in September and October. (ECF No. 45,
3  Exhibit 13 at 3).
4          The court must draw all reasonable inferences favorably to Peterson under the summary
5  judgment standard. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587
6  (1986). Here, a reasonable factfinder could find UFCC's omission of a clear payment schedule
7  created unavoidable ambiguity when nine additional payments were owed in a twelve month
8  period. Summary judgment is therefore not appropriate because the court finds Peterson's
9  assertions are subject to plausible factual inferences. *Sicor Ltd.*, 51 F.3d at 857.
10         The court in *Setty* resolved a similar dispute concerning whether a policy had been canceled
11 or renewed by examining the dates set forth in the payment schedule. *Setty v. United Fin. Cas.*
12 *Co., Inc.*, 2023 WL 5184147 (N.D. Cal. Aug. 11, 2023). There, payment was due on the 27th of
13 each month under the UFCC policy. *Id*. It is unclear why there was not a similar payment schedule
14 set forth here, and the dispute created by such ambiguity cannot be resolved on summary judgment.
15         Based on the conflicting evidence and parties' contentions, there remains a genuine issue
16 of material fact as to whether the contract was valid at the time of the collision. The court therefore
17 denies summary judgment as to Peterson's breach of contract claim.
18     B. <u>Fraudulent Misrepresentation</u>
19         Peterson concedes in his response that there is no factual basis to support his second claim
20 for fraudulent and intentional misrepresentation. (ECF No. 45). The court will construe Peterson's
21 concession on summary judgment as a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2);
22 *see Williams v. Sparks*, 2023 WL 2634377 (D. Nev. 2023) (voluntarily dismissing plaintiff's claim
23 that was factually unsupported on summary judgment). Peterson's claim for fraudulent and
24 intentional misrepresentation is therefore dismissed.
25     C. <u>Breaches of Implied Covenant of Good Faith and Fair Dealing</u>
26         The court considers the two claims for contractual and tortious breaches of the implied
27 covenant of good faith and fair dealing together.
28 . . .

Insurance contracts have an implied covenant of good faith and fair dealing between both parties. *Pemberton v. Farmers Ins. Exchange*, 109 Nev. 789 (Nev. 1993). An insurer fails to act in good faith when it refuses "without proper cause" to compensate the insured for a loss covered by the policy. *Id*. at 793. A violation of the covenant gives rise to a bad faith tort claim when a special relationship exists between the parties, such as insured and insurer. *Allstate Ins. Co. v. Miller*, 125 Nev. 300, 308 (Nev. 2009).

To prevail on a bad faith claim, the plaintiff must show the insurer unreasonably denied or delayed payment of a valid claim and did so with knowledge that no reasonable basis for denial existed. *Guaranty Nat. Ins. Co. v. Potter*, 112 Nev. 199 (Nev. 1996). Thus, Peterson must prove UFCC canceled Zazueta's policy with the knowledge that it had no reasonable basis to do so.

The parties dispute the policy terms. From UFCC's perspective, it properly canceled the policy in compliance with Nevada's statutory requirements and the terms of the policy. From Peterson's perspective, UFCC wrongfully canceled the policy prematurely.

The omission of a clear payment schedule created a reasonable ambiguity for both parties. UFCC offers evidence showing two bills it sent to Zazueta requesting payment prior to canceling the policy. This is demonstrative of UFCC's basis for canceling the policy, as the failure to make timely payments owed under a contract constitutes a material breach. *NAC Found., LLC v. Jodoin*, 2017 WL 1246338, at *3 (D. Nev. Mar. 31, 2017). This is consistent with other courts finding an insurer's reliance on a potentially effective cancellation does not in itself illustrate bad faith. *Inks v. USAA Gen. Indem. Co.*, 2018 WL 3589116 (N.D. Okla. June 27, 2018).

Even construing UFCC's allegations favorably to Peterson, he fails to meet the standard necessary to succeed on a bad faith insurance claim in contract or tort. The court finds UFCC had a reasonable basis for attempting to cancel the policy, believing Zazueta defaulted on payments. The court makes this finding without reaching the merits of whether the cancellation was indeed proper.

D. Nevada Unfair Claims Practices Act; NRS 686A.310, NAC 686A et seq.

Peterson's final claim alleges UFCC failed to comply with the requirements of NRS §§ 687B.320 and 687B.360, which mandates cancellation procedures for insurance contracts. NRS

§ 686A.310(1)(m) provides that an insurer who fails to comply with the provisions of NRS §§ 687B.310 to 687B.390, inclusive, has committed an unfair claim practice.

NRS § 687B.320(1)(a) allows an insurer to cancel a policy if the policyholder fails to pay. The cancellation notice must be "accompanied by a written explanation of the specific reasons for the cancellation." NRS § 687B.310(6).  The explanation must state "with reasonable precision the facts on which the insurer's decision is based."  NRS § 687B.360.

Peterson contends UFCC's notice did not state the reason for cancellation with precision. UFCC argues the notice stated the reason for the cancellation was nonpayment, thereby complying with Nevada's statutory requirements.  The court agrees with UFCC.

The notice sent to Zazueta stated, "Unfortunately, we didn't receive your payment and, as a result, your policy will be canceled…".  ECF No. 40, Exhibit F.  The court finds the written cancellation notice unambiguously set forth the reason for cancellation as nonpayment.  Peterson's contention that UFCC was required to provide a more precise explanation than the one given is not supported by law. *Kolob Heating & Cooling v. Ins. Corp. of New York*, 154 F. App'x 569 (9th Cir. 2005) (affirming that nonpayment as a reason for cancellation is reasonably precise).

Peterson also alleges UFCC failed to inform Zazueta of her right to request additional information concerning the cancellation.  Nevada law requires insurers to provide specific information about cancellation upon request.  NRS § 687B.360.  The court finds Peterson's allegation directly controverted by the plain language of the cancellation notice.  The notice unambiguously states Zazueta "may make a written request for additional information about this cancellation."  ECF No. 40, Exhibit F at 3.

The notice complied with the statutory requirements provided in NRS § 687B such that Peterson cannot establish a claim under the Nevada Unfair Claim Practices Act.  The court therefore grants summary judgment to UFCC on Peterson's remaining claim.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant UFCC's motion for summary judgment (ECF No. 40) be, and the same hereby is, DENIED as to plaintiff's claims

for (1) breach of contract and GRANTED as to the plaintiff's claims for (3) breach of the contractual covenant of good faith and fair dealing, (4) breach of the tortious covenant of good faith and fair dealing, and (5) violation of the Nevada Unfair Claims Practices Act.

IT IS FURTHER ORDERED that plaintiff's claim for fraudulent and intentional misrepresentation is DISMISSED without prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

DATED September 23, 2024.

_____
UNITED STATES DISTRICT JUDGE